N. W. RAY *et al.* v. A. G. THORNTON *et als.*

*Homestead—Personal Property Exemption.*

1. In laying off the homestead, it is not necessary for the appraisers to run it off by course and distance, and any description by which the land can be located, is a compliance with the provisions of the statute.

2. Where the land laid off as a homestead is subject to a mortgage, no question affecting the rights and priorities of the mortgagee can be raised unless he is a party to the action.

3. In alloting the homestead, the value of the buildings erected on the land must be considered by the appraisers, for the homesteader is not entitled to $1,000 worth of land, and also the buildings which may be on it.

4. A return of the appraisers of the personal property set apart, which designates it with sufficient certainty, is all that the statute requires.

5. An allotment of a homestead will not be set aside, because it might have been assigned in a manner more convenient to the homesteader.

This was an APPEAL from the appraisers allotting a homestead, taken under §520 of *The Code*, tried at the Spring Term, 1885, of the Superior Court of CUMBERLAND county, before *Avery, Judge.*

The sheriff of Cumberland county had in his hands two executions, one in favor of the People's National Bank, to the use of N. W. Ray, and the other in favor of A. A. McKethan and others, both against A. G. Thornton. The sheriff appointed appraisers to lay off and assign to A. G. Thornton his homestead and personal property exemption. He owned a lot in the town of Fayetteville on which he resided, containing about one and a half acres of land. There were situated upon the lot a dwelling-house, several other buildings, a well, and a garden, planted at the time of laying off the homestead. It was admitted that the lot with the buildings, &c., was worth more than a thousand dollars, and the land without the buildings not more than six hundred dollars.

The appraisers made the following return: "We have viewed and appraised the homestead of the said A. G. Thornton, and the dwelling and buildings thereon owned and occupied by said A. G. Thornton as a homestead, to be set apart to him as a homestead, to be worth one thousand dollars and that the tract is bounded as follows: The dwelling-house on north of Laman street, Fayetteville, occupied by the defendant, fronting on Laman street, and running a straight line with the yard fence separating the house yard from the garden, and extending the line of the fence northward in a straight line, as it now runs, say northward to Jas. Tucker's line, exempting all of said lot that lies on the western side of the above described line, and it is therefore exempted from sale under execution according to law.

"This leaves all east of said line, including the garden and stables, as not included in the exemption.

"At the same time and place, we viewed and appraised at the values annexed, the following articles of personal property selected by said A. G. Thornton:

The household and kitchen furniture, bedding, table-
    ware, garden utensils, silverware, &c.,_____$315.00
Three head of cattle,_____    20.00
                                                     _____
                                                     $335.00

Four chattel mortgages: B. Jernigan,_____$10.00
                        J. C. Blocker,____ 50.00
                        John Cooper,_____ 25.00
                        T. A. Hodges,____ 10.00
                                          _____
                                                     95.00
                                                     _____
    Total,_____ $430.00
which we declare to be a fair valuation, and that the said articles are exempt under said execution."

The defendant's well from which he gets water, is outside of the homestead allotted, and so is the stable and garden,

which was then planted. The line extending from the garden fence runs through the defendant's smokehouse, which is twelve feet wide by eighteen feet long, so as to cut off one foot and a half at the side, leaving nearly the whole of the smokehouse on the excess, and the same line runs through an outhouse, one room of which was occupied by the defendant's cook, and the other by a tenant, so as to leave one foot and a half of the buildings on the homestead.

The defendant, A. G. Thornton, objects to the allotment of the homestead and personal property exemptions laid off to him under the foregoing executions, and assigns the following grounds therefor.

"1. *As to the homestead.*—The lot of land is in one tract or lot of about one and one-half acres under one enclosure, was valued at six hundred dollars, and the dwelling and buildings used therewith were valued at eleven hundred dollars, making a total valuation of seventeen hundred dollars, and the lot was so cut up and apportioned to the defendant, as to leave him only about one-half an acre of land, with the dwelling and a part of the buildings used therewith, which was valued at one thousand dollars, as a homestead.

" The defendant objects and contends that he is entitled to a homestead *in land* of the value of one thousand dollars, and " the dwellings and buildings used therewith " belong and are incident to, the homestead *in land*, and are not to have additional value in the valuation of the homestead under the Constitution and laws of North Carolina.

"2. That the smoke house, stable and outhouse on the premises are " buildings used therewith," and that they, together with his garden, which was planted, his cow lot, and well from which he and his family were supplied with water, were cut off by the assessors, and under the allotment which they have made in their return, form a part of the excess proposed to be sold under the executions aforesaid.

"3. That the smokehouse, stable and outhouse, together with the garden, well, and cow lot, ought to be a part of the

homestead, and are but incidents of the same, and should have been included in the allotment thereof, regardless of the additional value of the same.

"4. That seeing that his lot was to be cut up in portions, the defendant notified the assessors that he claimed the right to make his selection, which was not allowed him.

"5. That as the land upon which the "dwelling and buildings used therewith" were erected is worth only six hundred dollars, there was no excess upon which a levy could legally be made to satisfy the foregoing or any other executions.

"6. That said homestead as laid off by the assessors was not fixed and described by metes and bounds, as required by the laws of North Carolina.

"7. That at the time of said assessment, the defendant exhibted to the assessors two certain mortgages on the entire lot of land, one in favor of Thos. C. Whitfield, and the other in favor of A. G. Brady, upon the latter of which the defendant, while denying that the debt the mortgage was given to secure was due in full, admitted that a part of the same was due, and the entire amount of the Whitfield mortgage was and is yet due, and the Brady debt and mortgage was in litigation; and while claiming that the valuation of the lot of *land* was only to be made and the "dwelling and buildings used therewith" were incidents of and belonged to the homestead, yet he insisted that if the assessors should divide the land and find what they call an excess, that the excess aforesaid was liable to the satisfaction of the mortgage debts *first*, in exoneration of his homestead, and now insists that such is the plain interpretation of the Constitution of North Carolina, Art. X. §2.

"*As to the personal property exemption.*—The defendant objects that the said appraisers failed to make or return a descriptive list of the same or the value of the articles exempted as required by law."

The Court held that it was not necessary to describe the land allotted by giving the course and distance of each of

the boundary lines in the return, it being admitted that the lot on which the defendant lived was divided into two lots by said line. The defendant contended that the returns should set forth the metes and bounds, giving the course and length of each of the boundary lines, and excepted to the ruling of the Court.

The Court also held, that the mortgagees, T. C. Whitfield and A. G. Brady, not being parties to this proceeding, it was not material to ascertain whether either had a lien prior to that of the plaintiff in either of the executions. That the question raised by counsel would only arise when the proper parties should appear before the Court, and ask a ruling as to the disposition of the fund arising from the sale of the excess.

To this ruling the defendant excepted. The Court overruled all the objections of the defendant to the returns of the appraisers, and confirmed their report, from which judgment the defendant appealed.

*Mr. N. W. Ray*, for the plaintiffs.
*Mr. T. H. Sutton*, for the defendants.

ASHE, J., (after stating the facts). The objection made by defendant that the homestead was not laid off by metes and bounds, we do not think is sustainable. The act does require that the homestead shall be laid off by metes and bounds, but metes and bounds do not mean that it shall be laid off by course and distance. The metes and bounds of a tract of land may be designated by the course of a stream, the line of another tract, by a wall, and even by a fence, and if the fence should be moved it would be competent to prove where it had stood. We think the boundaries of the homestead stated in this return, sufficiently come up to the requirements of the statute, for there can be no doubt as to the boundary of the homestead. It is described as the dwelling-house on the north of Laman

street, in Fayetteville, and running a straight line with the yard fence separating the house yard from the garden, and extending the line of the fence northward in a straight line as it now runs, say northward to James Tucker's line, exempting all of said lot that lies on the northern side of the above described line. This defines the boundary with as much definiteness as if it had been described by course and distance.

His Honor very properly held that in this proceeding, the mortgagees not being parties, no adjudication upon their relative rights with those of the execution creditors could be of any binding force. Any such adjudication as that insisted upon by the defendant, would have been extrajudicial. It is a postponed question to be decided between the mortgagees and those creditors.

As to the objection that the defendant was not allowed by the appraisers to make his selection, we do not find in the record, nor in the statement of the case, any mention of such a claim having been set up by the defendant. It only appears in the objection filed by the counsel with the clerk, and can only be regarded as the suggestion of counsel and cannot be entertained.

The objection, that the value of the buildings upon the land were taken into consideration by the appraisers in estimating the value of the homestead, cannot be sustained. The defendant's counsel contended that the defendant was entitled to a homestead *in land* of the value of one thousand dollars, and the dwelling and buildings used therewith belong and are incident to the homestead in land, and are not to have additional value in the valuation of the homestead, and that as the land upon which the " dwelling and buildings used therewith," were erected, is worth only six hundred dollars, there was no excess upon which a levy could be made.

The contention of the defendant's counsel, is founded upon a misconception of the Constitution and the act of the legis-

RAY *v.* THORNTON.

lature. It seems as plain to us as language can make it, that the value of the buildings on the land is to be taken into account in estimating the value of the homestead. The Constitution, Art. X. §2, reads: " Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars," &c. There is no ambiguity in this language; it leaves no room for doubt that it means in ascertaining the homestead, which is not to exceed one thousand dollars, the value of the dwellings and buildings is to be taken into the estimate with that of the land upon which they are situated. The language of *The Code*, §503, is not less unambiguous. It provides that "the appraisers shall thereupon proceed to value the homestead with its dwellings and buildings thereon, and lay off," &c. This evidently means that the land and buildings there shall be valued together in making up the estimate of a thousand dollars.

The construction contended for by the defendant, would open the door to the grossest injustice and dishonesty. If such a doctrine should be established by the decision of this Court, then a debtor owing thousands of dollars, and owning a small piece of land not worth more than one hundred dollars, might invest his whole estate in the erection of an edifice thereon—a hotel, for instance, at the cost of ten thousand dollars—and then bid his creditors defiance. It is impossible to believe that the framers of the Constitution ever contemplated that the adoption of this beneficent provision should lead to consequences so unjust and absurd.

There is nothing in the remaining objection to the report, that the appraisers failed to make or return a descriptive list of the personal property and assess the value of the articles exempted as required by law. The list, we think, is sufficiently descriptive. It sets out all the household and kitchen furniture, all the bedding, all the table ware, all the garden utensils, all the

37

silver ware, estimated in the aggregate and assessed to be worth $315. The other articles are specifically enumerated and the value attached to each.

The homestead might have been allotted with more convenience to the defendant in respect to the out-buildings on the lot, but we do not think that that is sufficient ground for setting aside the report of the appraisers.

Our conclusion is, there was no error, and the judgment of the Superior Court is affirmed.

No error.                                                   Affirmed.